UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARK A. RAPP, SR., *et al.*, | ) | CASE NO. 1:20-cv-2059 |
| *On behalf of themselves and all others similarly situated,* | ) ) ) | |
| Plaintiffs, | ) ) | MAGISTRATE JUDGE THOMAS M. PARKER |
| v. | ) ) | |
| FOREST CITY TECHNOLOGIES, INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## ORDER GRANTING MOTION FOR CLASS CERTIFICATION, CONDITIONAL CERTIFICATION, AND APPOINTMENT OF CLASS COUNSEL[1]

Pending before the court is plaintiffs Mark A. Rapp Sr.'s and A. Michael Perrine's (collectively, "plaintiffs") motion for Fed. R. Civ. P. 23 Class Certification, Conditional Certification Pursuant to 29 U.S.C. § 216(b), and Appointment of Class Counsel. ECF Doc. 24. Defendants Forest City Technologies, Inc., and John Cloud Jr. (collectively, "defendants") do not oppose the motion. Dkt. Entry dated 7/01/2021. For the following reasons, plaintiffs' motion is **GRANTED**.

### I.     Proposed Class Definitions

Representative plaintiffs seek Rule 23 certification of two state law, Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111.03, subclasses (collectively, the "Rule 23 Subclasses") of non-exempt hourly employees of Forest City Technologies, Inc. ("FCT"). The Rule 23 Subclasses are identified as follows:

---

[1] The parties consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF Doc. 17).

The "*Rule 23 Off the Clock Class*": All present and former hourly manufacturing employees of defendant Forest City Technologies, Inc. in Ohio during the period of October 1, 2017 until October 1, 2019 (1) who worked more than forty (40) hours during one or more workweeks, (2) whose timekeeping records were destroyed by Forest City Technologies, Inc., (3) who were not paid for all hours worked by virtue of having their time edited, modified and/or rounded, and (4) who were not included in the *Nagy v. Forest City Technologies, Inc., et al*., N.D. Ohio No. 1:19-cv-02290[2] settlement; and

The "*Rule 23 Regular Rate Class*": All present and former hourly manufacturing employees of defendant Forest City Technologies, Inc. in Ohio during the period of two years preceding the commencement of this action to the present who, during one or more workweeks when they worked more than forty (40) hours, were paid nondiscretionary payments including, but not limited to, in the form of shift differential, "additional pay," and other payments that were not factored into their overtime pay. This *Rule 23 Regular Rate Class* includes all hourly manufacturing employees as outlined in the previous sentence who were not included in the *Nagy* settlement, and all hourly manufacturing employees who were included in the *Nagy* settlement after July 20, 2020 (the *Nagy* settlement coverage period end date).

Plaintiffs also seek conditional certification of two Subclasses under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, 216(b) (collectively, the "FLSA Subclasses"). The FLSA Subclasses are identified as follows:

The "*FLSA Off the Clock Class*": All present and former hourly manufacturing employees of defendant Forest City Technologies, Inc. during the period of October 1, 2016 until October 1, 2019 (1) who worked more than forty (40) hours during one or more workweeks, (2) whose timekeeping records were destroyed by Forest City Technologies, Inc., (3) who were not paid for all hours worked by virtue of having their time edited, modified and/or rounded, and (4) who were not included in the *Nagy v. Forest City Technologies, Inc., et al.,* N.D. Ohio No. 1:19-cv-02290 settlement; and

The "*FLSA Regular Rate Class*": All present and former hourly manufacturing employees of defendant Forest City Technologies, Inc. during the period of three years preceding the commencement of this action to the present who, during one or

---

[2] This case is one of two wage and hour cases that challenge FCT's alleged policies and practices that result in the failure to pay overtime. In *Nagy v. Forest City Technologies, Inc., et al.,* N.D. Ohio No. 1:19-cv-02290 ("*Nagy*"), a hybrid Fed. R. Civ. P. 23 class action/29 U.S.C. § 216(b) collective action settlement providing back overtime wages and liquidated damages for FCT's machine operators received Rule 23 settlement approval for $750,000.00 by this court on November 23, 2020.

more workweeks when they worked more than forty (40) hours, were paid nondiscretionary payments including, but not limited to, in the form of shift differential, "additional pay," and other payments that were not factored into their overtime pay. This *FLSA Regular Rate Class* includes all hourly manufacturing employees as outlined in the previous sentence who were not included in the *Nagy* settlement, and all hourly manufacturing employees who were included in the *Nagy* settlement after July 20, 2020 (the *Nagy* settlement coverage period end date).

As further outlined below, the requirements of Fed. R. Civ. P. 23 for each Rule 23 Subclass are satisfied. Likewise, plaintiffs have demonstrated a "colorable claim" supporting plaintiffs' allegations that they are similarly situated to other potential plaintiffs, entitling plaintiffs to conditional certification under the FLSA.

## II.    Factual Allegations

### A.    *Rule 23 and FLSA Off the Clock Subclasses*

Plaintiffs allege that FCT's policies and practices pay hourly manufacturing workers comprising the *Off the Clock Subclasses* not based on the actual time manufacturing workers are clocked in and working but based on arbitrary times entered into the timekeeping system by management. ECF Doc. 23-1. Plaintiffs cite one of FCT's written policies that states that "[t]ime is based on 1/4 hr. For example: if you punch in at 7:31 and stay till 10:14, you will get paid from 7:45 until 10:00," though the parties dispute whether this policy was applicable across all of FCT's locations. ECF Doc. 23-1 at 6-7; ECF Doc. 24-11. Plaintiffs allege that this policy, and the alleged editing conducted by defendants, constitutes a *per se* violation of the FLSA and corresponding Ohio wage laws. ECF Doc. 23-1 at 7-9.

During the applicable time periods for the *Off the Clock Subclasses*, at least some of FCT's manufacturing workers were required to clock into and out of the timekeeping system by entering a five-digit employee identification number, pressing a button indicating the type of punch they are entering into the system, and using their finger on the scanner to biometrically register their

presence. ECF Doc. 24-2 at 52:13-52:23. FCT's electronic timekeeping system, provided by Paycom Payroll LLC ("Paycom"), captured the exact time that manufacturing workers "clock in" at the beginning of a schedule shift and begin working, and "clock out" when they have completed their shift. ECF Doc. 24-2 at 52:2-52:7,15-20. While used as an attendance device, the timekeeping system "highly correlate[d] to the time that they were working." ECF Doc. 24-2 at 52:5-52:7. FCT keeps no posted weekly or daily work scheduled for manufacturing workers. *See* ECF Doc. 24-2 at 98:9-98:19.

The Paycom system automatically rounds to the nearest quarter hour. For example, were an employee to clock in at 6:55 a.m. (5 minutes prior to the hour), Paycom will adjust the clock-in time to 7:00 a.m. ECF Doc. 24 at 12-13. However, when a manufacturing worker clocked in at a time that would result in an employee-favorable automatic rounding adjustment – such as if the employee clocked in at 6:52 a.m. (which is closer to 6:45 a.m. than 7:00 a.m. and would trigger the Paycom automatic rounding rule system to round back to the prior quarter of an hour) – plaintiffs allege FCT's payroll "approvers" would edit the time to a time that would cause the Paycom automatic rounding rule to round against the employee. ECF Doc. 24 at 13. In the previous example, the edited time would result in the manufacturing worker's clock-in time to be rounded up to the next quarter hour, and not the previous quarter hour (which would had been the case had the time not been edited). *Id.* Plaintiffs allege this practice occurs both at the beginning and end of shifts across-the-board. ECF Doc. 24 at 13.

After manufacturing workers provide timekeeping information by either punching in and out of the timeclock, or writing the information down on handwritten time records (as further explained below), a payroll approver has the opportunity to unilaterally accept or reject the reported times, and the accepted times are transmitted to Paycom for payroll. Plaintiffs have filed

4

a spreadsheet (ECF Doc. 24-1 – Appendix A to plaintiffs' motion) containing more than 7,500 examples across FCT's facilities that plaintiffs claim evidence the alleged unlawful time manipulation policies at the core of this litigation for FCT's manufacturing workers who were not included in the *Nagy* settlement.

Plaintiffs have filed the written Time Rules Policy, which plaintiffs argue demonstrates a practice evident in thousands of examples across each FCT plant and applied to all of FCT's manufacturing workers. *See* ECF Doc. 24-11 (directed to "All Employees"). The spreadsheet filed by plaintiffs purports to document examples of unlawful time manipulation practices at FCT Plants 1, 2/4, 3, 5, 7, 8, and Rockford. *See generally* ECF Doc. 24-1. For their part, Rapp and Perrine claim they too were affected by the alleged time manipulation policies and practices. ECF Doc. 23-1 at 7; ECF Doc. 24 at 17; *see* ECF Doc. 24-1 at 24-1 at 635-62, 689-94. Defendants dispute that the policy applied across-the-board or that Rapp and Perrine were affected by unlawful time manipulation policies/practices. *See generally* ECF Doc. 28. Defendants contend that the policy did not apply across-the-board. ECF Doc. 30-1 at 126:2-126:5, 127:12-127:13.

Plaintiffs also allege that although manufacturing workers are given the opportunity to make corrections or changes to their times based on handwritten records submitted to management, tens of thousands of these records that existed before approximately October 2019 (when the *Nagy* matter was filed) have been destroyed. ECF Doc. 23-1 at 12-13; ECF Doc. 24 at 17-21. In addition to Paycom's electronic timekeeping system and FCT's payroll system, FCT manufacturing workers also use handwritten records – referred to as "attendance slips," "overtime slips," or "hours slips" – to record their work. ECF Doc. 24 at 17; ECF Doc. 24-2 at 35:2-36:23. These records would have contained the manufacturing worker's "name, the date, and the times they worked…" in addition to a place for a supervisor to sign off. ECF Doc. 24-2 at 102:4-102:9. They

"contain[ed] accurate information about starting and stopping times" on the days the manufacturing worker worked overtime, more than the manufacturing worker's shift. ECF Doc. 24-2 at 36:9-36:15. And they would be signed by the manufacturing worker and a supervisor, and ultimately submitted to an "approver" who was supposedly tasked with reconciling it with the data in the Paycom system. ECF Doc. 24-2 at 102:10-103:1.

FCT concedes the handwritten time records were in fact destroyed for all manufacturing workers, including for all manufacturing workers who were not included in *Nagy*, and for each manufacturing worker at each one of FCT's 11 manufacturing plants, including all 10 plants in Ohio. ECF Doc. 24-2 at 109:9-110:2, 128:9-128:15, 144:24-144:11, 145:25-146:4, 148:3-148:9, 148:22-25, 154:10-154:14. Individual defendant and FCT representative John Cloud Jr. admits that every one of the handwritten time slips created prior to approximately October of 2019 was destroyed for all manufacturing workers – machine operators, technicians, and all other categories. ECF Doc. 24-2 at 110:17-110:22.

### B. *Rule 23 and FLSA Regular Rate Subclasses*

Plaintiffs claim FCT does not properly calculate the regular rates of its manufacturing workers when paying overtime compensation because they exclude categories of "remuneration of employment" that must be included in the regular rate. ECF Doc. 23-1 at 9-12; 29 U.S.C. § 207(e). In determining their regular rates, FCT does not include the wages paid to manufacturing workers in the form of non-discretionary payments such as shift differential and "additional pay" payments. ECF Doc. 23-1 at 10; ECF Doc. 24 at 24.

Plaintiffs have filed the Employee Handbook, which provides that "[a] shift differential is paid to all evening and night shift employees. The rate is currently $.30 for 2nd shift and $.60 for 3rd shift and is subject to change at the sole discretion of the Company." ECF Doc. 24-12 at 19;

*see also* ECF Doc. 24-2 at 143:18-144:10. However, plaintiffs assert that FCT's payroll system does not include the shift differential payments when computing the "regular rate." ECF Doc. 23-1 at 10; ECF Doc. 24 at 24. They have filed records showing instances in which shift differential payments were not included in computing the "regular rate." *E.g.*, ECF Doc. 24-6; ECF Doc. 24-7; ECF Doc. 24-8; ECF Doc. 24-9; ECF Doc. 24-10. For example, if a manufacturing worker worked 20 hours on shift 1 at $20 per hour, 20 hours on shift 3 at $20.60 per hour, and 5 overtime hours on shift 1, FCT's practice is to pay the rate of $30.00 for the 5 shift 1 overtime hours. ECF Doc. 23-1 at 10-11; *see also* ECF Doc. 24-2 at 163:13-165:10. However, the regulations required FCT to first calculate the proper regular rate by adding the compensation during the workweek from all such rates, and then divide that amount of total pay by the total number of hours worked. 29 C.F.R. §§ 778.207, 778.115. Plaintiffs contend that these violations allegedly occur across FCT's facilities for all manufacturing workers, including all manufacturing workers who were not included in the settlement in *Nagy* and all manufacturing workers who were included in the *Nagy* settlement after July 2020. ECF Doc. 23-1 at 11-12; ECF Doc. 24 at 25-26.

Second, plaintiffs allege that FCT makes "additional pay" payments to manufacturing workers who are required to perform work outside their regular shift, which plaintiffs claim violates the FLSA, 29 U.S.C. § 207 and Ohio law by failing to include "additional pay" payments when computing the "regular rate" for overtime purposes. ECF Doc. 23-1 at 11-12; ECF Doc. 24 at 25-26. Under FCT's payroll policies, the additional pay is paid "just on top of whatever else [the manufacturing workers] receive in the week." ECF Doc. 24-1 at 156:5-156:8.

### III.    Analysis

#### A.    Ohio Law Entitles Workers to Pursue Unpaid Overtime on a Class Basis

As an initial matter, district courts in the Sixth Circuit have repeatedly found that a FLSA collective action and Rule 23 class action may be maintained in the same lawsuit. *Stephenson v. Family Sols. of Ohio, Inc.*, No. 1:18cv2019, 2021 U.S. Dist. LEXIS 65421, at *35 (N.D. Ohio Apr. 5, 2021) (collecting cases).

#### B.    Defendants' Time Editing, Rounding, and Records Destruction Policies and Practices Violate the FLSA and Ohio law

Although it is not illegal *per se* for an employer to round time clock entries, Department of Labor regulations require both that employees' time be rounded "to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour" and that the method "will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48(b).  However, although neutral time clock rounding practices – rounding both up and down in a way that averages out over time – are legal, rounding practices that ultimately benefit the employer and result in the underpayment of wages are always illegal.  *See Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1076 (9th Cir. 2016); *Boone v. Primeflight Aviation Servs.*, No. 15-CV-6077, 2018 U.S. Dist. LEXIS 28000, at *21 (E.D.N.Y. Feb. 20, 2018).

Courts around the country have recognized overtime violations where an employer rounded down time without evidence that the rounding practice *averaged out* to fully compensate employees for the time worked. *See, e.g.*, *Austin v. Amazon.com, Inc.,* No. C09-1679JLR, 2010 U.S. Dist. LEXIS 45623, at *7-12 (W.D. Wash. May 10, 2010) (denying motion to dismiss because the FLSA "does not contemplate the situation where an employer allows rounding ... but disciplines the employee when the rounding does not work to the employer's advantage."); *Chao*

*v. Self Pride, Inc.,* No. RDB 03-3409, 2005 U.S. Dist. LEXIS 11653, at *19 (D. Md. June 14, 2005) (finding violation where employer rounded down time without evidence that the rounding practice averaged out to fully compensate for time worked). Similarly, courts across the country have certified Rule 23 class actions based upon facially neutral rounding policies which are applied in a manner that result in an advantage to the employer. *See, e.g.*, *Tapia v. Zale Del., Inc.,* No. 13-CV-1565-BAS (PCL), 2016 U.S. Dist. LEXIS 48046, at *6-11 (S.D. Cal. Apr. 6, 2016) (certifying class/collective where policy was facially neutral, but evidence demonstrated rounding resulted in underpayment of wages); *Schneider v. Union Hosp., Inc*., No. 2:15-cv-00204-JMS-DKL, 2016 U.S. Dist. LEXIS 142427, at *45 (S.D. Ind. Oct. 14, 2016) (certifying non-neutral time rounding combined class action and FLSA collective action); *Canelas v. World Pizza*,No. 14 Civ. 7748 (ER), 2017 U.S. Dist. LEXIS 50615, at *25-26 (S.D.N.Y. Mar. 31, 2017) (certifying Rule 23 class where "Defendants rounded their employees' hours to the nearest half hour each day and then paid wages only for those rounded hours, instead of actual hours worked … [and] failed to preserve records of any hours worked by their employees, actual or rounded").

Here, plaintiffs allege that FCT required its manufacturing workers to work a full 15 minutes to get paid any additional time worked. ECF Doc. 24 at 20, 22; *see also* ECF Doc. 24-11. In addition, although FCT's Paycom timekeeping system rounds to the nearest quarter hour (as permitted by 29 C.F.R. § 785.48(b)), the Paycom Punch Audit Reports and Punch Change Reports indicate numerous edits. *See generally* ECF Doc. 24-1. Supervisors manually edited manufacturing workers' punch times and replaced them with different times which the Paycom system then used to round to the nearest quarter, half, or full hour and calculate hours worked. When these edits were applied, work starting and ending times were edited against the employee to either the hour or to several minutes prior to the hour which then triggered the Paycom system

to round against the manufacturing worker. Plaintiffs contend the result is that the timekeeping system virtually never rounded to the manufacturing workers' benefit. ECF Doc. 24 at 22.

As such, plaintiffs claim that FCT paid less than one and a half times the regular rate for all overtime hours suffered or permitted to work in violation of state and federal wage laws. 29 U.S.C. § 207(a)(1); Ohio Rev. Code § 4111.03; 29 C.F.R. § 778.107; ECF Doc. 24 at 23. "Ohio law incorporates the FLSA's definitions, standards, and principles for its … overtime compensation provisions." *Gilbo v. Agment LLC*, No. 1:19-cv-00767, 2020 U.S. Dist. LEXIS 26031, at *17 (N.D. Ohio Feb. 14, 2020) (citation omitted).[3] According to plaintiffs, FCT's records demonstrate thousands of examples in which FCT's editing and rounding policies resulted in violations of the FLSA and every class member was subject to these time rounding and editing policies and practices. ECF Doc. 24 at 23.

### C. Defendants' Regular Rate Computation Policies and Practices Violate the FLSA and Ohio law

Plaintiffs claim that FCT does not properly calculate the regular rates of manufacturing workers when paying overtime compensation because it excludes categories of "remuneration of employment" that must be included in the regular rate. ECF Doc. 23 at 9; ECF Doc. 24 at 24; 29 U.S.C. § 207(e). FCT's requirements are summarized in 29 C.F.R. § 778.207:

> (b) Nonovertime premiums. The Act requires the inclusion in the regular rate of such extra premiums as nightshift differentials (whether they take the form of a

---

[3] As noted in, *Mickens v. Sweet Twist Frozen Yogurt, LLC*, there is one exception – "Ohio law permits the recovery of overtime wages but does not provide for liquidated damages." No. 2:20-cv-2244, 2021 U.S. Dist. LEXIS 97394, at *4 (S.D. Ohio May 24, 2021); Ohio Rev. Code § 4111.10(A); *see also* Ohio Rev. Code. § 4111.03(A) ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of … [the FLSA]."). Therefore, as in this Opinion, the Ohio Law and FLSA claims are analyzed together. *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007) (providing that Ohio law expressly incorporates the standards and principles found in the FLSA).

percent of the base rate or an addition of so many cents per hour) and premiums paid for hazardous, arduous or dirty work....

In addition, 29 C.F.R. § 778.115 controls when employees are paid at two or more rates:

Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates. That is, his total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs.

29 C.F.R. § 778.208 further provides:

Section 7(e) of the Act requires the inclusion in the regular rate of all remuneration for employment except eight specified types of payments …. Bonuses which do not qualify for exclusion from the regular rate as one of these types must be totaled in with other earnings to determine the regular rate on which overtime pay must be based. Bonus payments are payments made in addition to the regular earnings of an employee….

Plaintiffs claim that FCT's own payroll records for manufacturing workers demonstrate that FCT failed to include the "additional pay" payments in computing the "regular rate." ECF Doc. 23-1 at 11; ECF Doc. 24 at 25. The additional pay is simply "[paid] just on top of whatever else [manufacturing workers] receive in the week." ECF Doc. 24-2 at 156:5-156:8.

### D.    Rule 23 Certification

The court now turns to the merits of plaintiffs' request for certification under Fed. R. Civ. P. 23. Plaintiffs must show that "the four prerequisites of Rule 23(a)" – numerosity, commonality, typicality, and adequate representation – are satisfied, and "the proposed class must also meet at least one of the three requirements listed in Rule 23(b)." *Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.)* (hereafter "*In re Whirlpool*"), 722 F.3d 838, 850 (6th Cir. 2013); *accord Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013); *Stephenson*, 2021 U.S. Dist. LEXIS 65421, at *36. The district court "has broad discretion to decide whether to certify a class under Rule 23." *Stephenson*, 2021 U.S. Dist. LEXIS

65421, at \*37 (citing *Hicks v. State Farm Fire and Casualty Co.*, 965 F.3d 452, 457 (6th Cir. 2020) and *In re Whirlpool*, 722 F.3d at 850). Certification is appropriate "if the court finds, after conducting a rigorous analysis, that the requirements of Rule 23 have been met." *In re Whirlpool*, 722 F. 3d at 851 (quotation marks and citations omitted).

A class action plaintiff "must affirmatively demonstrate his compliance with the Rule— that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 486 (S.D. Ohio 2014) (quotation marks omitted); *accord In re Whirlpool*, 722 F.3d at 851 (the court's determination "should be predicated on evidence presented by the parties concerning the maintainability of the class action"). Although there might be "some overlap between the proof necessary for class certification and the proof required to establish the merits of the plaintiffs' underlying claims," the "permissible inquiry into the merits of the plaintiffs' claims at the class certification stage is limited." *In re Whirlpool*, 722 F.3d at 851 (citation omitted).

Here, certification is sought under Rule 23(b)(3), "which requires the district court to find that the questions of law or fact common to class members predominate over any questions affecting only individual members and that the class action is superior to other available methods' to adjudicate the controversy fairly and efficiently." *Id.* at 850-51 (quotation marks omitted).

### 1. Ascertainability

Though it is not an express requirement of Rule 23(a), "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012) (quotation marks and citation omitted). In the present case, the identities of the members of the proposed Rule 23 Subclasses are identifiable and ascertainable

based on the wage and hours FCT maintained, and was required to maintain, under the FLSA and Ohio law. *See, e.g.*, 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; Ohio Rev. Code §§ 4111.08, 4111.14(F); Ohio Const. art. II, § 34a.

## 2. Numerosity

Rule 23(a)(1) requires a showing that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Sixth Circuit has held that there is "no strict numerical test" to establish numerosity. *Young*, 693 F.3d at 541. "Often, 'a class of 40 or more members is sufficient to meet the numerosity requirement.'" *Castillo*, 302 F.R.D. at 487 (quoting *Snelling v. ATC Healthcare Servs. Inc.*, No. 2:11-CV-00983, 2012 U.S. Dist. LEXIS 172052, 2012 WL 6042839, at *5 (S.D. Ohio Dec. 4, 2012)).

In the present case, the *Rule 23 Off the Clock Class* consists of approximately 204 members in total (ECF Doc. 24-2 at 41:4-41:11), and the *Rule 23 Regular Rate Class* consists of a minimum of approximately 310 members (*see, e.g.*, ECF Doc. 24-19 (Spreadsheet List of 2021 Hourly Employees from Paycom, excluding "clerical wage" employees); ECF Doc. 24-20 (Check Register Reports for All Hourly Employees for Period Ending Aug. 22, 2020); ECF Doc. 24-21 (Check Register Reports for All Hourly Employees for Periods Ending April 17, 2021 and May 1, 2021). Thus, numerosity is clearly met as joinder of all members is impracticable. Rule 23(a); *see also Stephenson*, 2021 U.S. Dist. LEXIS 65421, at *39 ("a putative class of approximately 150 individuals is adequate to show impracticability of joinder and, therefore, satisfy the numerosity requirement").

## 3. Commonality

The "commonality" requirement of Rule 23(a)(2) is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see also Dillow v. Home Care Network,*

*Inc.*, No. 1:16-cv-612, 2017 U.S. Dist. LEXIS 85788, at *7 (S.D. Ohio June 5, 2017). The focus of this requirement is whether a class action will generate common answers that are likely to drive resolution of the lawsuit. *Dukes*, 564 U.S. at 351 (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L. Rev. 97, 132 (2009)). Class members must "have suffered the same injury," and "[t]heir claims must depend upon a common contention ... of such a nature that it is capable of classwide resolution." *In re Whirlpool*, 722 F.3d at 852 (quoting *Dukes,* 564 U.S. at 350).

While class members' claims must be common, they need not be identical – the "requirement is met where questions linking the class members are substantially related to the resolution of the litigation even though the individuals are not identically situated." *Swigart v. Fifth Third Bank,* 288 F.R.D. 177, 183 (S.D. Ohio 2012) (quoting *Parkhill v. Minn. Mut. Life Ins. Co.*, 188 F.R.D. 332, 338 (D. Minn. 1999)). In other words, "commonality is met when determining the truth or falsity of a common contention 'will resolve an issue that is central to the validity of each one of the claims in one stroke, advancing the litigation." *Kopaleishvili v. Uzbek Logistics Inc*., No. 1:17-cv-702, 2019 U.S. Dist. LEXIS 209529, at *13 (S.D. Ohio Dec. 4, 2019) (quotation marks omitted). Commonality is met "as long as the members of the class have allegedly been affected by a *general* policy of the defendant[,]" not whether each class member's claims are unique in other ways. *Sweet v. Gen. Tire & Rubber Co*., 74 F.R.D. 333, 335 (N.D. Ohio 1976). A plaintiff may, for example, present payroll records that demonstrate that a defendant did not pay overtime wages for overtime hours worked to satisfy commonality. *Dillow*, 2017 U.S. Dist. LEXIS 85788, at *7; *Castillo*, 302 F.R.D. at 487 (granting certification where plaintiff submitted "Weekly Time Sheets," contrasted with "Payroll Register" print-outs, showing class members were not paid overtime).

In this matter, there are questions of law or fact common to the *Rule 23 Off the Clock Class*, including (1) whether defendants paid overtime compensation to plaintiffs and other *Rule 23 Off the Clock Class* members at one and one-half times their "regular rate" for all hours worked in excess of 40 hours in a workweek; (2) whether defendants knowingly, willfully, intentionally and/or negligently destroyed wage and hour records that were required to be maintained pursuant to Ohio law; (3) whether defendants knew or should have known that plaintiffs and other *Rule 23 Off the Clock Class* members were working for hours that they were not paid, but still failed to pay them; and (4) what amount of monetary relief will compensate plaintiffs and other members of the *Rule 23 Off the Clock Class* for defendants' violation of Ohio Rev. Code §§ 4111.03 and 4111.10. *See* ECF Doc. 23-1 at 16-17.

Likewise, there are questions of law or fact common to the *Rule 23 Regular Rate Class*, including (1) whether defendants paid overtime compensation to plaintiffs and other *Rule 23 Regular Rate Class* members at one and one-half times their "regular rate" for all hours worked in excess of 40 hours in a workweek; (2) whether defendants factored nondiscretionary payments including, but not limited to, in the form of shift differential and "additional pay," into plaintiffs' and other *Rule 23 Regular Rate Class* members' "regular rates" for the purpose of calculating overtime pay; and (3) what amount of monetary and other relief will compensate plaintiffs and other members of the *Rule 23 Regular Rate Class* for defendants' violations of Ohio Rev. Code §§ 4111.03, 4111.10, 4111.08, 4111.14(F); and Ohio Const. art. II, § 34a. *See* ECF Doc. 23-1 at 16-17.

As to the *Rule 23 Off the Clock Class*, the facts in this case suggest that manufacturing workers are hired through the same standard application process. *See* ECF Doc. 24-2 at 38:4-38:9. Manufacturing workers comprising this Rule 23 Subclass are evaluated based on a standard

performance appraisal process. ECF Doc. 24-2 at 39:8-41:11, 42:9-42:19. Moreover, records demonstrate that the alleged unlawful time manipulation policies and practices as outlined in the First Amended Complaint occurred during the entire applicable time period, at each FCT plant, and categorically applied to manufacturing workers comprising the proposed Subclass. ECF Doc. 24-1; ECF Doc. 24-11. Plaintiffs have provided what they contend to be more than 7,500 examples across FCT's facilities demonstrating that the alleged unlawful time manipulation policies at the core of this litigation for manufacturing workers who were not included in the *Nagy* case applied to the proposed Subclass. ECF Doc. 24 at 15; *see generally* ECF Doc. 24-1.

As to the *Rule 23 Regular Rate Class*, the records indicate that FCT does not calculate the correct regular rate for all manufacturing workers. The FCT Employee Handbook provides that "[a] shift differential is paid to all evening and night shift employees." ECF Doc. 24-12 at 19; *see also* ECF Doc. 24-2 at 143:18-144:10. The evidence provided thus far indicates that FCT's payroll system does not factor the shift differential payments when computing the "regular rate" for all manufacturing workers. *See generally* ECF Doc. 24-20 (Check Register Reports for All Hourly Employees Period Ending Aug. 22, 2020); ECF Doc. 24-21 (Check Register Reports for All Hourly Employees Periods Ending April 17, 2021 and May 1, 2021). Similarly, the evidence proffered demonstrates instances when other payments such as "additional pay" are paid to employees but not factored into the calculation of the regular rate. *See generally* ECF Doc. 24-1. Rule 23's commonality requirement is satisfied as plaintiffs' claims involve "common contention[s]" that are "capable of classwide resolution." *In re Whirlpool Corp.*, 722 F. 3d at 852 (quotation marks omitted).

### 4. Typicality

The "typicality" requirement of Rule 23(a)(3) is satisfied where "the claims … of the representative parties are typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3). Typicality is met if the class members' claims are "fairly encompassed by the named plaintiffs' claims." *In re Whirlpool*, 722 F.3d at 853 (quotation marks omitted). The representatives' claims are typical if they "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members" and are "based on the same legal theory." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 618 (6th Cir. 2007) (quotation marks omitted).

Typicality ensures that "the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *In re Whirlpool*, 722 F.3d at 852-53 (citation omitted). Typicality and commonality "'tend to merge,' as both 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Kopaleishvili*, 2019 U.S. Dist. LEXIS 209529, at *40-41 (quoting *Dukes*, 564 U.S. at 349 n.5).

In the present case, and for many of same reasons commonality is established, the evidence proffered indicates that plaintiffs Rapp's and Perrine's claims are "typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3). As to the *Rule 23 Off the Clock Class*, plaintiffs Rapp and Perrine appear to have been affected by the alleged unlawful time manipulation practices and policies at the core of this case. *See* ECF Doc. 24-1 at 689-90 ("[w]hile working at FCT Plant 7 on 2/14/2018, [Rapp] punched out of the timeclock at the end of the workday at 7:40 AM. However, the time was edited by FCT management to 7:30 AM."); ECF Doc. 24-1 at 635 ("[w]hile working at FCT

Plant 7 on 11/22/2017, [Perrine] punched out of the timeclock at the end of the workday at 3:44 PM. However, the time was edited by FCT management to 3:30 PM.")). As to the *Rule 23 Regular Rate Class*, plaintiffs were also paid remunerations of employment that were required to be factored into the regular rate when computing overtime but appear not to have been.

Plaintiffs' claims are the same as all class members' claims, and arise out of a single course of conduct – FCT's policies and practices of failing to pay overtime compensation as required by Ohio law – and plaintiffs and class members rely on the same legal theories. *See Kopaleishvili*, 2019 U.S. Dist. LEXIS 209529, at *40. Moreover, successful litigation of plaintiffs' claims will advance the interests of all class members. *Powers*, 501 F.3d at 618. The only difference is the amount of overtime worked (for the *Rule 23 Off the Clock Subclass*) and unpaid overtime wages owed (for both Rule 23 Subclasses). Typicality is met.

### 5. Adequacy of Representation

"Adequacy of representation" is satisfied where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A court looks to two criteria for determining adequacy of representation: (1) the class representatives "must have common interests with unnamed members of the class;" and (2) "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young*, 693 F.3d at 543 (quotation marks omitted).

In the present case, class plaintiff Rapp has vigorously prosecuted this action and will continue to do so, and proposed additional class plaintiff Perrine will also vigorously prosecute this action. For example, plaintiff Rapp has provided 42 pages of discovery responses including objections (ECF Doc. 24-22), and plaintiff Perrine has submitted a declaration in support of plaintiffs' motion (ECF Doc. 24-13). Plaintiffs' interests also appear to be further aligned with

the Rule 23 Class Members' interests. *See Kopaleishvili*, 2019 U.S. Dist. LEXIS 209529, at *41 (adequacy is found when "[p]laintiff and the putative class members share the same interest … in that [t]he named Plaintiff suffered the same alleged injury as the proposed class members, having been paid [the same way]"). In addition, plaintiffs' counsel have broad experience in wage-and-hour litigation as well as class litigation, having successfully litigated class actions on behalf of thousands of claimants. *See* ECF Doc. 24-23 (Declaration of Proposed Class Counsel). Here, as in *Kopaleishvili*, "Plaintiff is represented by qualified counsel experienced in the work of class action litigation, as demonstrated by counsels' citation to numerous, prior examples of their representation." 2019 U.S. Dist. LEXIS 209529, at *41.

### 6. Rule 23(b)(3): Predominance and Superiority

In addition to showing that the proposed class satisfies the requirements of Rule 23(a), plaintiffs must demonstrate that the class "fall[s] within one of the three types of class actions listed in Rule 23(b)." *Young*, 693 F.3d at 537 (citation omitted). This case qualifies for certification under Rule 23(b)(3). The Supreme Court has stated "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). Here, both the predominance and superiority requirements have been met.

### a. Predominance

The predominance requirement of Rule 23(b)(3) is satisfied when "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Under *Amgen*, this "requires a showing that *questions*

common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459. Thus, "the predominance inquiry must focus on common questions that can be proved through evidence common to the class." *In re Whirlpool*, 722 F.3d at 858 (citation omitted). The plaintiff "need not prove that each element of a claim can be established by classwide proof[,]" only that "common questions '*predominate* over any questions affecting only individual [class] members.'" *In re Whirlpool Corp.,* 722 F.3d at 852 (emphasis in original) (quoting *Amgen*, 133 S. Ct. at 1196). "[C]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir.2007) (quotation marks omitted).

Here, both liability and damages issues for both Rule 23 Subclasses can be determined on a class-wide basis. The principal liability questions – (1) whether FCT's time editing, time rounding, 15-minute time pay, and destruction of records policy, shown in practice in Appendix A across all FCT plants, results in the failure to pay overtime in violation of Ohio law; and (2) whether FCT's failure to calculate overtime by failing to include all remuneration in the regular rate violates Ohio law – can most effectively and efficiently be answered on a class basis. Thus, the common issues in this case "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

### b.       *Superiority*

The "superiority" requirement of Rule 23(b)(3) is satisfied where "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, a court considers: (1) the interests of class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of

concentrating the litigation in a forum; and (4) the difficulties in managing the class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

These four factors weigh heavily in favor of class certification. The Sixth Circuit has noted that "[u]se of the class method is warranted particularly [when] class members are not likely to file individual actions—the cost of litigation would dwarf any potential recovery." *In re Whirlpool*, 722 F.3d at 861 (citations omitted); *see also Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (noting that "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits" because of litigation costs). In this case as well, manufacturing workers lack the resources to bring individual suits against FCT for its overtime violations, or "the cost of litigation would dwarf any potential recovery." *In re Whirlpool*, 722 F.3d at 861. In *Nagy*, machine operators – one category of FCT manufacturing workers – received an average of $1,704.16 in settlement of their FLSA and Ohio law claims. *See* ECF for Case No. 1:19-cv-2290, Doc. 29. Although plaintiffs allege that the individual values of the remaining manufacturing worker's claims are likely higher in this case, even at $2,000, the attorney fees and costs of any individual litigant will dwarf any potential recovery. ECF Doc. 24 at 36. Moreover, in employment cases as here, courts have noted that:

> [L]itigating against one's employer is an inherently fraught proposition that may discourage class members from either opting in to an FLSA collective action or asserting their state law wage and hour claims on an individual basis. Thus, even when class member identities are easily determined from employee rosters, joinder is often nevertheless impracticable.

*Ganci v. MBF Insp. Servs.,* 323 F.R.D. 249, 256 (S.D. Ohio Oct. 27, 2017) (citation omitted).

The other factors also favor class certification. First, although settlement of the *Nagy* matter was public, the court is aware of no manufacturing worker not included in the *Nagy* settlement who has filed an individual action. No other current or pending actions related to an alleged

overtime violation by FCT is ongoing.  *See Carnegie*, 376 F.3d at 661.  Third, for each Rule 23

Subclass, all putative class members worked at FCT's Ohio facilities, making this court the

appropriate forum.  Fourth, the class action is manageable given the relatively small class size and

limited necessary individual inquiries.  The superiority requirement is therefore also met.

For the foregoing reasons, plaintiffs' motion for Fed. R. Civ. P. 23 Class Certification is

**GRANTED** as to both the *Rule 23 Regular Rate Class* and the *Rule 23 Off the Clock Class*.

### E.        FLSA Conditional Certification

Under the FLSA, an employee may bring a collective action on behalf of himself and

"other employees similarly situated."  29 U.S.C. § 216(b).  For FLSA collective actions, class

certification typically occurs in two stages: conditional and final certification.  *Frye v. Baptist*

*Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012).  The sole effect of early, "conditional"

certification is to provide notice to similarly situated employees enabling them to opt in.  *See*

*Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006).  Later, after the

completion of merits discovery, trial courts "examine more closely the question of whether

particular members of the class are, in fact, similarly situated."  *Osman v. Grube, Inc.,* No. 16-

cv-802, 2017 U.S. Dist. LEXIS 105276, at *17 (N.D. Ohio July 7, 2017) (quoting *Comer*, 454

F.3d at 547).

At the conditional certification stage, "the plaintiff must only 'make a modest factual

showing' that he is similarly situated to other employees he is seeking to notify."  *Waggoner v.*

*U.S. Bancorp*, 110 F.Supp.3d 759, 764 (N.D. Ohio June 24, 2015) (quoting *Comer*, 545 F.3d at

546-47).  Plaintiffs are similarly situated "'when they suffer from a single, FLSA-violating

policy, and when proof of that policy or of conduct in conformity with that policy proves a

violation as to all plaintiffs.'"  *Id.* at 765 (quoting *Obrien v. Ed Donnelly Enters.*, 575 F.3d 567,

585 (6th Cir. 2009), *overruled on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). Plaintiffs are also similarly situated when "their claims [are] unified by common theories of defendants' statutory violations, even if proofs of these theories are inevitably individualized and distinct." *Id.* (quotation marks omitted).

In cases in which parties have already conducted some discovery on the issue of conditional certification, courts in this Circuit have applied a "modest plus'" standard. *Weisgarber v. N. Am. Dental Grp., LLC*, No. 4:18CV2860, 2020 U.S. Dist. LEXIS 48398, at *6 (N.D. Ohio Mar. 20, 2020). "Ultimately, the court determines whether the plaintiff has 'made sufficient showing beyond their original allegations that would tend to make it more likely that a class of similarly situated employees exists.'" *Id.* (quoting *Creely v. HCR ManorCare, Inc.*, 789 F.Supp.2d 819, 827 (N.D. Ohio 2011)). This slightly heightened standard "requires an elevated factual showing, something beyond what is alleged in the pleadings and otherwise advancing the ball down the field beyond the pleadings." *Id.* (quotation marks omitted). That said, even under a heightened standard, the court will not evaluate the merits of the claims, resolve factual disputes, or evaluate credibility. *Id.* (citations omitted). And while courts "should not apply a Rule-23 type analysis" in determining conditional certification, *Struck v. PNC Bank N.A.*, No. 2:11-CV-00982, 2013 U.S. Dist. LEXIS 19444, at *10-11 (S.D. Ohio Feb. 13, 2013), for the foregoing reasons, plaintiffs have satisfied the more stringent Rule-23 type analysis.

As explained above, plaintiffs' FLSA *Off the Clock* and *Regular Rate* claims satisfy this standard as they are not *idiosyncratic*– that is, they "are not predicated on the unique circumstances of any one" individual. *Stout v. Remetronix, Inc*., No. 3:13-cv-026, 2013 U.S. Dist. LEXIS 112563, at *12 (S.D. Ohio Aug. 9, 2013) (citation omitted). Although the Sixth Circuit stated that a "[s]howing a 'unified policy' of [FLSA] violations is not required" for FLSA collective action

certification, plaintiffs have established, for purposes of conditional certification, that plaintiffs' and similarly situated employees' claims are unified by a common theory of alleged statutory violation. *O'Brien*, 575 F.3d at 584. Specifically, that FCT failed to pay overtime as a result of FCT's time editing, time rounding, and destruction of records and that FCT allegedly failed to pay overtime at the proper rate after considering all remunerations of employment. As outlined in the Rule 23 analysis above, FCT's policies and practices were not predicated on the unique circumstances of any one individual but were the result of broader policies and practices that appear to have resulted in violations of the FLSA.

Here, plaintiffs have attached class-wide evidence that is indicative of a general practice employed by FCT. Although plaintiffs are not required to prove a unified policy of FLSA violations, the evidence presented suggests the existence of one. Plaintiffs' motion as to FLSA conditional certification is therefore **GRANTED**.

## IV. Plaintiffs' Counsel are Appointed Class Counsel

Fed. R. Civ. P. 23(g) requires the court to appoint Class Counsel. Plaintiffs' counsel have completed substantial amounts of work in identifying and investigating the claims in this case, have extensive experience litigating hybrid class/collective wage-and-hour cases and substantial knowledge of the applicable law, and have demonstrated a willingness to commit the necessary resources to prosecute the claims of the Rule 23 Class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Plaintiffs' counsel are competent and experienced in class and collective wage-and-hour litigation. *See* ECF Doc. 24-23 at ¶¶ 5-15. Plaintiffs' counsel have met the requirements of Rule 23(g) and are therefore appointed Class Counsel as to the Rule 23 Subclasses. Plaintiffs' motion as to appointment of Class Counsel is therefore **GRANTED**.

## V.    Plaintiffs and Defendants are Ordered to Meet and Confer as to the Notice to Class Members and Potential Opt-Ins by Mail and E-mail

As to notice, as outlined below, this court ORDERS plaintiffs and defendants to meet and confer to determine whether a mutually-agreeable regular mail and email notice and class/collective member notification process can be submitted to the court for approval. *See, e.g.*, *Weisgarber,* 2020 U.S. Dist. LEXIS 48398, at *19; *In re FCA U.S. LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 117 (E.D. Mich. 2019).

## VIII.   CONCLUSION

Accordingly, for the foregoing reasons, plaintiffs' motion for Fed. R. Civ. P. 23 Class Certification, Conditional Certification Pursuant to 29 U.S.C. § 216(b), and Appointment of Class Counsel is **GRANTED**. This court certifies the *Rule 23 Off the Clock Class* pursuant to Fed. R. Civ. P. 23 defined as:

> All present and former hourly manufacturing employees of defendant Forest City Technologies, Inc. in Ohio during the period of October 1, 2017 until October 1, 2019 (1) who worked more than forty (40) hours during one or more workweeks, (2) whose timekeeping records were destroyed by Forest City Technologies, Inc., (3) who were not paid for all hours worked by virtue of having their time edited, modified and/or rounded, and (4) who were not included in the *Nagy v. Forest City Technologies, Inc., et al.*, N.D. Ohio No. 1:19-cv-02290 settlement.

This court also certifies the *Rule 23 Regular Rate Class* pursuant to Fed. R. Civ. P. 23 defined as:

> All present and former hourly manufacturing employees of defendant Forest City Technologies, Inc. in Ohio during the period of two years preceding the commencement of this action to the present who, during one or more workweeks when they worked more than forty (40) hours, were paid nondiscretionary payments including, but not limited to, in the form of shift differential, "additional pay," and other payments that were not factored into their overtime pay. This *Rule 23 Regular Rate Class* includes all hourly manufacturing employees as outlined in the previous sentence who were not included in the *Nagy* settlement, and all hourly manufacturing employees who were included in the *Nagy* settlement after July 20, 2020 (the *Nagy* settlement coverage period end date).

In addition, this court conditionally certifies the *FLSA Off the Clock Class* pursuant to 29 U.S.C. § 216(b) defined as:

> All present and former hourly manufacturing employees of defendant Forest City Technologies, Inc. during the period of October 1, 2016 until October 1, 2019 (1) who worked more than forty (40) hours during one or more workweeks, (2) whose timekeeping records were destroyed by Forest City Technologies, Inc., (3) who were not paid for all hours worked by virtue of having their time edited, modified and/or rounded, and (4) who were not included in the *Nagy v. Forest City Technologies, Inc., et al.,* N.D. Ohio No. 1:19-cv-02290 settlement.

This court also conditionally certifies the *FLSA Regular Rate Class* pursuant to 29 U.S.C. § 216(b), defined as:

> All present and former hourly manufacturing employees of defendant Forest City Technologies, Inc. during the period of three years preceding the commencement of this action to the present who, during one or more workweeks when they worked more than forty (40) hours, were paid nondiscretionary payments including, but not limited to, in the form of shift differential, "additional pay," and other payments that were not factored into their overtime pay. This *FLSA Regular Rate Class* includes all hourly manufacturing employees as outlined in the previous sentence who were not included in the *Nagy* settlement, and all hourly manufacturing employees who were included in the *Nagy* settlement after July 20, 2020 (the *Nagy* settlement coverage period end date).

In addition, the court appoints and designates plaintiffs' counsel, attorneys Joseph F. Scott, Ryan A. Winters, and Kevin M. McDermott II of Scott & Winters Law Firm as class counsel and plaintiffs Mark A. Rapp Sr. and A. Michael Perrine as class representatives.

Finally, the plaintiffs and defendants are ordered to meet and confer, through counsel, regarding the content and form of notice to be given to the Rule 23 class members and proposed FLSA collective action members and to submit, within twenty-one days of the date of this Order, a joint proposed judicial notice and proposed notice process by both regular mail and email. Defendants shall, within twenty-one days of the date of this Order, provide plaintiffs with a list of the full name and last known home address of each current and former employee fitting the class

descriptions, their dates of employment, and their last known personal email address. The list shall be produced electronically and in hard copy.

**IT IS SO ORDERED.**

Dated: <u>July 15, 2021</u>

Thomas M. Parker
United States Magistrate Judge